IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2005

**ERICK BAILEY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-B-1017     Seth Norman, Judge**

**No. M2005-00181-CCA-R3-PC - Filed October 7, 2005**

The petitioner, Erick Bailey, was found guilty of second degree murder and felony murder.  His conviction of second degree murder was merged into his conviction of felony murder, and he was sentenced to life imprisonment.  Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel were ineffective.  The post-conviction court denied the petition, and the petitioner appeals.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Richard D. Dumas, Jr., Nashville, Tennessee, for the appellant, Erick Bailey.

Paul G. Summers, Attorney General and Reporter; and Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On direct appeal, this court summarized the facts underlying the appellant's convictions as follows:

> [T]he victim left his home on the evening of December 27, 1998 to rent video movies and to buy food for an evening meal for himself, his two children, his girlfriend, and other family members.  The victim was driving his girlfriend's gold-colored Camaro that was accessorized with a set of chrome wire wheels valued at approximately $4,000.  After renting the videos and buying the food,

he stopped at an Aztec convenience store on Dickerson Road and at 7:48 p.m. prepaid for ten dollars' worth of gas with ten one-dollar bills. He left the store through the rear door in the direction of the gas pumps that were located on the back side of the store.

At or about this time, the [petitioner] was riding on Dickerson Road with his twin brother Derrick Bailey and two cousins, Alvin Hall and Javon Garrison, in Derrick Bailey's Cadillac. According to Mr. Hall's testimony, Derrick Bailey was driving and the [petitioner] was riding in the front passenger seat. Due to the volume of the radio, Hall could not hear the conversation between the two Baileys in the front seat. After they passed the Aztec, Derrick Bailey turned the Cadillac around and drove back toward the Aztec. He pulled the car into the Taco Bell parking lot adjacent to the Aztec and parked behind the Taco Bell. The [petitioner] got out of the car and went through the shrubbery into the rear portion of the Aztec lot.

Derrick Bailey then drove the Cadillac back to the street and pulled up to the front of the Aztec store. Hall got out and went inside the store to buy a drink. Hall and the store clerk both testified that the [petitioner] was in the store when Hall came in. The [petitioner] asked Hall if he had change for $20 and, after receiving a negative response, exited the store through the rear door. According to the clerk, the [petitioner] exited the store some time after the victim had exited through the same door. The clerk did not specify the amount of time that elapsed between the victim's exit and the [petitioner's] exit through the same door. She testified that the next gas sale occurred "[a]t the most [ ] 20 minutes" after the victim's purchase.

Mary Ann Fenter, an Aztec customer, testified that when she drove to the rear of the Aztec only one car was present, a "champagne-colored" car parked beside a gas pump. Nearby were two men, one who was lying on the ground and the other, a black man, who was standing over and looking down at the prone man. The man who stood was holding onto the jacket of the prone man, who did not move. When the man who was standing saw Ms. Fenter looking at him, he turned loose of the other man's jacket, got into the champagne-colored car, and drove away in a manner that she "wouldn't call speeding, but . . . wouldn't call it slow."

Alvin Hall had exited the Aztec store through the front door and had rejoined Garrison and Derrick Bailey in Bailey's Cadillac. Bailey then drove the Cadillac around to the rear of the Aztec where Hall saw the Camaro with its headlights off, moving away from the

gas pump. The Cadillac followed the Camaro onto and down Dickerson Road. Both vehicles turned onto Bellshire Road. Hall asked to be let out, and Derrick Bailey stopped the Cadillac and let Hall and Garrison out.

Meanwhile, Ms. Fenter had alerted the store clerk, who called the police. Although neither Ms. Fenter nor the clerk had heard a gunshot, the victim had been shot by a .9 mm weapon that was fired within six inches of the victim's chest. The bullet struck the heart, liver, aorta, and spine. The victim died while on a hospital operating table.

Later that evening, a motorist discovered the Camaro on Jackson Road about two miles from Dickerson Road and five miles from the Aztec. Jackson Road is connected to Dickerson Road via Brick Church Road and Bellshire. The wheels and tires, radio, and speakers had been removed from the Camaro, and someone had ineffectually attempted to set the car afire.

The police were alerted to the [petitioner's] involvement in the crime by the store clerk's identification of him and his appearance on the store's surveillance videotape. After the police apprehended the [petitioner], they discovered $950 on his person, including 166 one-dollar bills. The [petitioner] admitted being at the Aztec during the evening of December 27 and said that he had "heard a shot."

The police obtained Derrick Bailey's Cadillac. They found evidence that someone had placed tires in the backseat. They photographed a portion of the back of the leather front seat, where an impression of raised lettering from a tire had been left. This lettering was identified as belonging to a specific make and model of tire that had been sold to the victim and mounted on the Camaro in the summer of 1998. Also, after recovering the Camaro, the police discovered a propane bottle in its trunk that bore the [petitioner's] fingerprint.

State v. Erick Darnell Bailey, No. M2001-01974-CCA-MR3-CD, 2002 WL 1336657, at **1-2 (Tenn. Crim. App. at Nashville, June 19, 2002). On appeal, this court modified the petitioner's conviction of first degree premeditated murder to a conviction of second degree murder and merged his second degree murder conviction into his felony murder conviction. Id. at *1. The petitioner received a life sentence.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that both of his trial counsel were ineffective. Chief among the petitioner's complaints were that trial counsel

failed to obtain an independent evaluation of the fingerprint evidence, failed to object to testimony from the State's expert that fingerprints found on a propane tank matched fingerprints of the petitioner, and failed to bring to the jury's attention a discrepancy in the testimony of two of the State's witnesses.

At the post-conviction hearing, the petitioner testified that he asked his trial counsel to secure an independent fingerprint analysis of the fingerprint which was found on a propane tank. The State's expert, Larita Marsh, testified at trial that the fingerprint belonged to the petitioner. However, to the petitioner's knowledge, counsel did not pursue an independent fingerprint analysis. The petitioner stated that when Marsh testified at trial, she said that she identified the fingerprint as the petitioner's by comparing "points" on the fingerprints. The petitioner contends that Marsh should have used a visual aid to demonstrate to the jury which points matched the petitioner's known fingerprint and the fingerprint which was found on the propane tank.

Finally, the petitioner maintained that at trial, State's witness Mary Ann Fenter testified that she saw the petitioner standing over the body of the victim in the parking lot of the Aztec convenience store at approximately 9:45 or 10:00 p.m. on the night of the shooting. Tammy Taylor, a clerk in the Aztec convenience store, testified for the State that on the night of the shooting she saw the victim and the petitioner in the store together at 7:48 p.m. The petitioner stated that the discrepancy in the witnesses' testimony was never mentioned by his counsel.

Larita Marsh testified at the petitioner's post-conviction hearing. Marsh stated that she had been a police identification analyst since 1995. She compared a known fingerprint of the petitioner's with the fingerprint that was retrieved from a propane tank found in the victim's Camaro. Marsh concluded, based upon her experience and training, that the fingerprints belonged to the same individual. She stated that at trial she informed the jury of the matching fingerprints. However, she did not use visual aids to show how she concluded that the fingerprints from the propane tank matched the petitioner's fingerprints. Additionally, Marsh stated that she had never been asked to prepare a visual aid regarding the matching of fingerprints in any trial in which she had testified. However, she asserted that, if requested, she could have prepared a photograph to show the "matching points."

Neither of the petitioner's trial counsel were called to testify at the post-conviction hearing.[1]

After the conclusion of the post-conviction hearing, the court issued an order denying the petition. In the order, the court stated that the petitioner failed to meet his burden of establishing by clear and convincing evidence that his trial counsel were ineffective. The petitioner appeals this ruling.

## II. Analysis

---

[1] In its order denying the post-conviction petition, the court noted that since the petitioner's trial, one of the petitioner's trial counsel had moved out of state and the other had passed away.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

On appeal, the petitioner complains that his trial counsel were ineffective by "[f]ailing to procure a private fingerprint expert to conduct an independent evaluation of the fingerprint evidence," "[f]ailing to object to testimony at trial that latent prints lifted from a propane tank matched inked prints of the Petitioner when a chart or other illustration to show the 'matching points' to the jury was not provided," and "[f]ailing to bring the jury's attention to a blatant discrepancy in the testimony of two of the State's witnesses."

First, we will address the petitioner's complaint that trial counsel failed to secure independent fingerprint analysis. In denying the petition for post-conviction relief, the post-conviction court noted that

-5-

the evidence against the petitioner and his brother was quite extensive and damning, as it clearly illustrated that the petitioner was the trigger man in the incident. Also, one witness called by the state was a man who worked in a tire shop where the victim had been the only person in the area to specially order a certain type of tire, the print of which was found on the back seat of the vehicle driven by the petitioner's brother. There is no proof to show that the employment of a fingerprint expert by the petitioner would have produced any different result in the outcome of this matter. In fact, such analysis may have only been similar to that which was submitted by the prosecution. Ample evidence of other nature existed to lead the jury to the conclusion that the petitioner was involved in the commission of the crime. The petitioner has not proven the existence of any prejudice with respect to this contention and the issue is therefore without merit.

From our review of the record, we can find no evidence to preponderate against the findings of the post-conviction court. At the post-conviction hearing, the petitioner summarily complained that counsel failed to procure an independent fingerprint analysis. The petitioner presented no proof that he was prejudiced by counsel's failure to secure independent testing; specifically, he did not produce any expert testimony at the post-conviction hearing to show that the State's analysis was flawed. See Henry Eugene Hodges v. State, No. M1999-00516-CCA-R3-PD, 2000 WL 1562865, at *17 (Tenn. Crim. App. at Nashville, Oct. 20, 2000); Sylvester Smith v. State, No. 02C01-9801-CR-00018, 1998 WL 899362, at *14 (Tenn. Crim. App. at Jackson, Dec. 28, 1998). Therefore, we conclude that he did not meet his burden of demonstrating counsel's ineffectiveness in this regard.

Additionally, we note that the petitioner did not present any proof that he was prejudiced by counsel's failure to seek some type of visual aid to explain the testimony of Marsh. The post-conviction court found:

> Marsh, the state's expert witness, testified at trial that the prints on the propane tank matched those of the petitioner. She compared the prints of the petitioner to those found on the tank and drafted a report of her findings, which was entered into evidence as an exhibit. Ms. Marsh testified that she could have made a photograph to show the matching points, but that it had never been done in past trials. She relied on the report she had made and was adamant that the right thumb print was the same as the petitioner's. The representation by counsel in this aspect was not deficient, as any objection made by counsel would not have been sustained on account that Ms. Marsh was testifying as to her opinion of the analysis of the fingerprints under Rule 702 of the Tennessee Rules of Evidence.

We find no evidence to preponderate against the post-conviction court's findings.

Finally, the petitioner complains that trial counsel were ineffective in failing to point out to the jury that there was a discrepancy between the times Taylor and Fenter testified that they saw the victim and the petitioner at the convenience store. The post-conviction court stated:

> The petitioner specifically notes that witness Mary Ann Fenter testified that she saw the victim between 9:45 and 10:00 pm. lying on the ground near the gas pumps with someone standing over him, while Tammy Taylor testified that she saw the victim and the petitioner in the store around 7:48 p.m. However, other evidence submitted at trial would tend to support the testimony of Ms. Taylor.
>
> Although there does seem to exist some discrepancy between the times that these witnesses allege the events occurred, the massive amount of evidence against the petitioner was so great that this one detail would not have served to exculpate the petitioner in the trial of this matter. Had counsel managed to point out this inconsistency, the outcome of the trial would not have been different. The petitioner's fingerprints were on several items, the victim's stolen tire prints were on the back seat of the petitioner's vehicle and the state introduced numerous witnesses whose testimonies placed the petitioner at the scene of the crime.

Accordingly, the post-conviction court found that the petitioner had not proven that he was prejudiced by counsel's failure to bring the inconsistency regarding the witnesses' testimony to the attention of the jury. We can find no evidence to preponderate against this finding. Thus, we conclude that the petitioner is not entitled to relief on this issue.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-7-